**NOT FOR PUBLICATION**                                                   **CLOSED**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                    :
RAYNALD ESTIME,                     :
                                    :   Civil Action No.
            Petitioner,             :   11-1928 (JLL)
                                    :
       v.                           :   **O P I N I O N**
                                    :
ERIC HOLDER, JR., et al.,           :
                                    :
            Respondents.            :
_____ :

**Linares**, District Judge:

On April 5, 2011, Petitioner Raynald Estime ("Petitioner"), a native of Haiti, who entered the United States on October 29, 1999, filed the instant Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security ("DHS")[1] at the Essex County Correctional Center. For the reasons set forth below, the Court will deny the Petition.

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

## BACKGROUND

According to the Petition, on December 15, 2009, Petitioner -- a Haitian citizen having permanent residency in the United States -- was convicted in the New Jersey Superior Court, Law Division, Essex County, on three charges constituting removable offenses. See Docket Entry No. 1, at 5.[2]  Petitioner was ordered removed on November 17, 2010. The accepts as true Petitioner's assertion that he waived his right to appeal that determination.  See id.

Citing nothing but the January 12, 2010 earthquake which devastated Haiti, Petitioner now asserts that: (a) there is no significant likelihood of his removal to Haiti in the reasonably foreseeable future; and, therefore, (b) Petitioner must be deemed illegally confined.  See Docket Entries Nos. 1 and 1-1.

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter

---

[2] The Petition does not specify the charges upon which Petitioner was convicted in New Jersey state court. See generally, Docket Entry No. 1. However, one of many exhibits Petitioner attached to his Petition indicates that Petitioner was convicted on charges of "possession of controlled dangerous substance, aggravated assault on a law enforcement officer and firearm violations." See Docket Entry No. 1-2, at 7.

jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner is detained within its jurisdiction and he asserts that his detention is not statutorily authorized and violates his constitutional rights.

## STANDARD OF REVIEW

Pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

I.   APPLICABLE LAW

    A.   Removal Period and Its Triggering Events

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C)

provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either ruled upon by the BIA or the time to appeal to the BIA expired, or the right to appeal was waived); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

### B. *Zadvydas* Period

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release.  See id. § 1231(a)(6).  However, in Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that aliens may be detained further under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably

necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention").

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

**II.   PETITIONER'S CONFINEMENT IS PROPER**

Here, Petitioner's Zadvydas six-month period was triggered on November 17, 2010, that is, the date when Petitioner allegedly waived his right to appeal his order of removal. Therefore, Petitioner's current Zadvydas-based presumptively reasonable period of detention will expire six months from November 17, 2010, i.e., on May 17, 2011. See Zadvydas v. Davis, 533 U.S. at 701. Consequently, Petitioner current detention is fully lawful, and his

claim based on the length of his detention are facially without merit and should be dismissed.

Moreover, here, Petitioner asserts that there is no significant likelihood of his removal to Haiti in the reasonably foreseeable future simply because of the earthquake suffered by Haiti in January 2010. Petitioner's argument is based on pure speculation at this juncture. See Zadvydas v. Davis, 533 U.S. at 701 ("the alien [must] provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). Nevertheless, if Petitioner is not removed to Haiti by May 17, 2011, Petitioner may file another § 2241 petition and may shift the burden to the government (that is, obligate the government to show the feasibility of Petitioner's removal) provided that such petition is based on more than the bald conclusions contained in the instant petition. For instance, Petitioner will have to demonstrate that "the circumstances of *his* status" or the existence of "particular barriers to *his* repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. See, e.g., Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).

Furthermore, while -- as a result of the earthquake -- the Secretary of the DHS, Janet Napolitano, granted temporary protected status ("TPS") to all Haitians living in the United States for a

period of eighteen months (effective from January 21, 2010, through July 22, 2011), the notice of humanitarian declaration issued by Secretary Napolitano expressly excluded Haitians convicted of certain crimes from TPS eligibility.  Specifically, persons convicted of any felony (or two or more misdemeanors) committed in the United States have been ordered ineligible for TPS.  See Fed. Reg. No. 2010-1169 (filed 01/20/2010, posted at <<http://edocket.access.gpo.gov/2010/2010-1169.htm>>).  Since Petitioner's exhibits indicate three felony convictions, accord <<https://www6.state.nj.us/DOC_Inmate/details?x=1436546&n=0>> (New Jersey Department of Corrections record, indicating Petitioner's convictions on the bases of three different offenses, committed on two different occasions, with each offense found punishable by 18-month period of imprisonment), Petitioner's status is unaffected by the TPS provision.  Thus, to the extent Petitioner's claims are based upon the TSP notice, such claims are also without merit and accordingly dismissed.

## CONCLUSION

For the foregoing reasons, the Petition will be denied. Petitioner may renew his Zadvydas-based challenges after May 17, 2011, in accordance with the guidance provided to him herein. Petitioner will be directed to pay his filing fee or duly apply for in forma pauperis status *in connection with the instant*

*application*.[3]  In the event Petitioner elects to file another Section 2241 petition, he shall submit a separate filing fee (or seek in forma pauperis status anew) in connection with that future

---

[3] "[A] pro se prisoner's habeas petition is deemed filed at the moment [(s)]he delivers it to prison officials for mailing to the district court." Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).  However, the issue of the limitations period aside,

> [a]n application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record.  [Moreover, an] application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe . . . the form of the document, . . . the court and office in which it must be lodged, and the requisite filing fee.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (citations and footnote omitted).
    Section 1914 provides that "[t]he [C]lerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 except that on application for a writ of habeas corpus the filing fee shall be $ 5." 42 U.S.C. § 1914(a).  A related statute, Section 1915, governs applications filed in forma pauperis ("IFP") and provides, in relevant part, that leave to proceed IFP may be granted in any suit to a litigant "who submits an affidavit [which demonstrates] that the [litigant] is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).  Specifically, in a habeas matter, the prisoner seeking to proceed IFP must submit to the Clerk: (a) a completed affidavit of poverty; and (b) a certification signed by an authorized officer of the institution certifying both the amount presently on deposit in the petitioner's prison account as well as the greatest amount on deposit in the petitioner's prison account during the six month period prior to the date of the certification. See Local Civil Rule 81.2(b).  The prisoner's legal obligation to prepay the filing fee or to duly obtain IFP status is automatically incurred by the very act of initiation of his/her legal action. See Hairston v. Gronolsky, 2009 U.S. App. LEXIS 22770, at *5 (3d Cir. Oct. 15, 2009) (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)).

application.

    An appropriate Order accompanies this Opinion.


                                      /s/ Jose L. Linares
                                      **JOSE L. LINARES**
                                      **United States District Judge**

Dated: April 18, 2011